UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | <u>Expedited Hearing Request</u> |
|---|---|
| In re: | Chapter 11 |
| | |
| TAMPA SKATING, LLC, | Case No. 8:11-bk-00085-CED |
| d/b/a Clearwater Ice Arena, and | |
| SKATING INVESTMENT, LLC | Case No. 8:11-bk-00088-CED |
| Debtor. | (Jointly Administered under |
| | Case No. 8:11-bk-00085) |
| | **Hearing Date: March 7, 2011 at 2:30 p.m.** |
| _____/ | Courtroom 10B, 801 N. Florida Ave., Tampa, FL. |

**APPLICATION TO EMPLOY EP USA, LLC d/b/a EQUITY PARTNERS AS
DEBTORS' BUSINESS BROKER AND NOTICE OF HEARING**

The Debtors, Tampa Skating, LLC and Skating Investment, LLC, by their

undersigned counsel, applies to this Court for approval of employment of their business

broker, EP USA, LLC d/b/a Equity Partners ("EP"), and respectfully state as follows:

1.      The Debtors filed their voluntary chapter 11 petitions on January 5, 2011,

and continue as Debtors-in-Possession.

2.      The Debtors desire to retain EP as their business broker and have entered

into an agreement with EP, attached hereto as <u>Exhibit "A"</u> ("Agreement"), for which they

seek this Court's approval.

3.      The Debtors believe that the retention of EP will be in the best interest of

the estates as EP has significant experience in locating buyers or investors for Debtors in

bankruptcy.

4.      Additionally, EP had been involved in the past with the marketing of

another ice skating facility in this geographic area.

5.      The Debtors had initiated contact with certain interested parties but have

not received any acceptable offers.  Attempting to bring in interested parties on their own

without professional assistance will be too time-consuming. EP will be able to formalize and streamline the process so that the value of the Debtors' assets is maximized.

6.      The Debtors seek approval of EP's application on an expedited basis because the Court has set a very short time frame for which the Debtors must file their plan.

7.      As set forth in the attached Affidavit of Kenneth Mann - attached as Exhibit "B" – EP does not currently represent any of the creditors in this case, or any other party in interest in this case.

8.      EP has not received a retainer from the Debtor. EP is not currently owed any sums from the Debtor.

9.      EP understands that its commission, fees and expenses must be reviewed by the United States Trustee and approved by the Court upon proper application.

**WHEREFORE**, the Debtors request that they be authorized to employ EP as its business broker under the terms of the Agreement, with fees to be paid only upon application to and order from the Court.

JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, P.A.

Angelina E. Lim
Michael C. Markham; FBN 0768560
Angelina E. Lim, FBN 0158313
Post Office Box 1368
Clearwater, Florida  33756
(727) 461-1818
(727) 443-6548 fax
E-Mail address: mikem@jpfirm.com
E-Mail address: angelinal@jpfirm.com
Counsel for the Debtors

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been served either electronically on all registered CM/ECF users, the U.S. TRUSTEE, 501 E. Polk Street, Suite 1200, Tampa, Florida 33602 and the Local Rule 1007-2 Parties in Interest List attached mailing matrix. on February 24, 2011.

/s/ Angelina E. Lim
Angelina E. Lim

(553881\1)

**AGREEMENT BETWEEN TAMPA SKATING, LLC d/b/a CLEARWATER ICE ARENA AND SKATING INVESTMENT, LLC ("DEBTORS") AND EP USA, LLC**

THIS AGREEMENT is made this 24th day of February, 2011 by and between TAMPA SKATING, LLC d/b/a CLEARWATER ICE ARENA AND SKATING INVESTMENT, LLC, Debtors and Debtors-in-Possession ("Debtors"), administratively consolidated under Case No. 8:11-bk-00085-CED ("Cases"), pending in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division ("Court"), and EP USA, LLC, D/B/A EQUITY PARTNERS, INC. ("EQUITY PARTNERS, INC."), a Maryland corporation.

## RECITALS

WHEREAS, Debtors are in Chapter 11 Cases and desire to either refinance or to seek a joint venture partner, restructure, sell, lease or otherwise dispose of the Debtors' business as a going concern and/or some or all of Debtors' interest in the assets of Debtors' estate, including but not limited to its real and personal property known as Clearwater Ice Arena, and located at 13940 Icot Blvd., Clearwater, FL 33760 (the "Assets"); and

WHEREAS, EQUITY PARTNERS, INC. is an enterprise specializing in turnarounds, financial restructuring, consulting, refinancing, sales as going concerns, purchase and sale of chattels and real property, liquidation of assets of financially troubled companies; and

WHEREAS, EQUITY PARTNERS, INC. is an enterprise with over twenty one years of experience in assisting over 350 financially troubled companies, including more than 120 in Chapter 11 in the United States Bankruptcy Court in over 50 Districts; and

WHEREAS, EQUITY PARTNERS, INC. has substantial experience in advertising and marketing for the purposes of locating investors and joint venture partners, selling as "going concerns" or otherwise disposing and refinancing of major properties, including properties and related establishments owned or leased by debtors involved in bankruptcy proceedings; and

WHEREAS, Debtors and EQUITY PARTNERS, INC. desire to enter into this Agreement regarding the services to be performed by EQUITY PARTNERS, INC. and the compensation to be paid to EQUITY PARTNERS, INC. for its services;

NOW, THEREFORE, in consideration of the promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Debtors and EQUITY PARTNERS, INC. hereby agree, subject to all the terms, covenants, conditions and provisions hereinafter set forth, as follows:



EXHIBIT

A

1. <u>EXCLUSIVE RIGHT TO RESTRUCTURE, ADVERTISE AND MARKET, AND TO REFINANCE, SELL, LEASE OR OTHERWISE DISPOSE OF THE ASSETS, OR TO FIND EQUITY INVESTORS OR A JOINT VENTURE PARTNER.</u> Debtors hereby retain EQUITY PARTNERS, INC. as Debtors' exclusive agent to restructure (meaning the possible financial restructuring of the existing claims of the creditors and/or equity stakeholders of the Debtors), advertise and market and to refinance, sell, lease or otherwise dispose of the Assets, or to find equity investors or a joint venture partner. Debtors acknowledge that EQUITY PARTNERS, INC. will be entitled to its fee regardless of who the buyer, lender, partner, or investor is or who brought them to the transaction. The term of EQUITY PARTNERS, INC.'s exclusive rights shall begin as of the date that this Agreement is approved by the Bankruptcy Court and shall continue for ninety (90) days.

2. <u>SERVICES.</u> EQUITY PARTNERS, INC. shall perform the following services:

(a) Inspect the Assets to determine their physical condition.

(b) Prepare a program which may include marketing the Assets through newspapers, magazines, journals, letters, fliers, signs, telephone solicitation, the Internet and/or such other methods as EQUITY PARTNERS, INC. may deem appropriate.

(c) Prepare advertising letters, fliers and/or similar sales materials, which would include information regarding the Assets.

(d) Endeavor to locate parties who may have an interest in becoming a joint venture partner, investing in, acquiring, or refinancing the Debtors' business or the Assets.

(e) Circulate materials to interested parties regarding the Assets, after completing confidentiality documents.

(f) Respond, provide information to, communicate and negotiate with and obtain offers from interested parties and make recommendations to Debtors as to whether or not a particular offer should be accepted.

(g) Communicate regularly with Debtors in connection with the status of EQUITY PARTNERS, INC.'s efforts with respect to the disposition of the Assets. This shall include a weekly written report to all Parties-in-Interest.

(h) If requested by Debtors, negotiate with various stakeholders of the Debtors, including but not limited to, secured and unsecured creditors and equity shareholders, in regards to the possible financial restructuring of the existing claims of the creditors and/or equity stakeholders of the Debtors.

(i) Recommend to Debtors the proper method of handling any specific problems encountered with respect to the marketing or disposition of the Assets.

(j) Perform related services necessary to maximize the proceeds to be realized for the Assets.

EQUITY PARTNERS, INC.'s services shall commence upon execution of the Agreement and the entrance of an order allowing the Debtors to engage EQUITY PARTNERS, INC. The proposed advertising and marketing program shall be submitted for Debtors' approval prior to release. The development of the advertising and marketing program shall be the sole responsibility of EQUITY PARTNERS, INC..

3. OFFERING PROCEDURE. EQUITY PARTNERS, INC. shall negotiate with all prospects and solicit offers for refinancing, investment by a third party, lease, and or potential sale of the Assets with the following procedures:

(a) All communications and inquiries regarding the assets shall be directed to EQUITY PARTNERS, INC.

(b) In order to be considered, all offers must be accompanied by appropriate financial material showing ability to close a transaction and include a deposit where deemed necessary. If a deposit is forfeited to the Debtors as liquidated damages because a buyer/investor fails to close on a transaction, EQUITY PARTNERS, INC. shall be entitled to retain, as a fee, the lesser of:

    (i)    50% of the deposit, or
    (ii)    An amount equal to what the fee would have been, under Section 6 herein, had the transaction closed.

(c) Debtors shall have the right to:

    (i)    determine in its sole discretion which offer is to be accepted; and
    (ii)    reject, at any time, any and all offers which in the Debtors' sole discretion is deemed to be inadequate or insufficient or not in conformity with the terms and conditions as it may determine to be in the best interest of the Debtors.

4. EXPENSES. EQUITY PARTNERS, INC. will prepare a budget for advertising, marketing, travel, and any other expenses, which shall not exceed twelve thousand dollars ($12,000), half of which amount shall be advanced to EQUITY PARTNERS, INC. by Debtors upon court approval of this agreement, ¼ of which shall be paid to EQUITY PARTNERS, INC. 20 days after court approval of this agreement, and ¼ of which shall be paid to EQUITY PARTNERS, INC. 40 days after court approval of this agreement. These monies are strictly for marketing costs such as printing, mailing, telephone and travel related expenses to meet investors and to provide due diligence materials to prospects. If expenses exceed $12,000, the excess will be the responsibility of EQUITY PARTNERS, INC.

5. GROSS VALUE. The term "Gross Value" as used in this Agreement shall include the aggregate consideration (1) received by the Debtors, the Debtors' equity interests and

holders of any secured, priority and/or general unsecured claims against the Debtors, and/or (2) otherwise paid or received from or to be paid under any direct or indirect Financing Transaction, Joint Venture or Sale Transaction, or Plan of Reorganization. Gross Value includes but is not limited to:

(a) Cash, stock, equity interests, membership interests and or partnership interests;

(b) Payments made in installments;

(c) Notes, securities and other property;

(d) Liabilities, including all debt and guarantees assumed, refinanced or

reorganized, on-balance sheet and off-balance sheet;

(e) Contingent payment (whether or not related to future earnings or operations):

(f) Any interest or other payments made on or in respect of debt;

(g) Any other payment made or in respect to the equity interests (including,

without limitation to the following, shareholder or membership interests) in the

Debtors and/or its affiliates;

(h) Any consideration payable under consulting agreements and/or non-compete

agreements;

(i) Any assignment of leases, whether real or personal property;

(j) Any release or assumption of bonds; and

(k) Any credit bids made by secured parties.

The fees and expenses of EQUITY PARTNERS, INC., including but not limited to those under 3 (b) herein, and all other closing costs and/or adjustments, including adjustments and/or payments of whatever kind to lien holders, secured parties, mortgages or otherwise shall not be deducted when computing "Gross Value" or the fee to be paid EQUITY PARTNERS, INC..

6. EQUITY PARTNERS, INC. FEE. EQUITY PARTNERS, INC.'s fee will be:
(a) in the case of an equity investment or sale, paid in cash at settlement of any investment and/or sale of assets closed and funded, or upon confirmation of a reorganization plan, for any offers received under the terms of this Agreement and the fee for its services shall be as follows:
8% of the first $2,000,000 (two million dollars) of gross value, and
6% of gross value in excess of $2,000,000 (two million dollars), or

(b) in the case of a restructuring, paid in cash upon approval of the restructuring and/or plan of reorganization, and shall be the greater of $75,000 or an amount calculated under sections 5 and 6(a) herein, or

(c) in the case of refinancing, paid upon settlement, and shall be the greater of $75,000 or 3% of the Gross Value.    In the case of refinancing, for purposes of calculating Gross Value, the total amount of the available financing offered will be used, whether or not the Debtors choose to draw down the entire amount available.

(d) in the case of a joint venture or merger, upon consummation, and shall be the greater of $75,000 or or an amount calculated under sections 5 and 6(a) herein.

(e) EQUITY PARTNERS, INC. shall be entitled to its fee even if a buyer purchases the ASSETS, or a claim directly from a secured creditor.    EQUITY PARTNERS, INC. shall be entitled to receive its fee from any purchase, refinance, equity investment, joint venture or restructuring completed within 12 months by/with a prospect identified during the term of this Agreement.

7. NOTICES.  All notices, statements, demands, requests, consents, communications and certificates from any party hereto to the other, shall be made in writing and sent to:

(a) If intended for the Debtors:

(b) If intended for EQUITY PARTNERS, INC.:

Michael Malki
Clearwater Ice Arena
13940 Icot Blvd.,
Clearwater, FL 33760

Kenneth W. Mann
Equity Partners, Inc.
101 N. West Street
Easton, Maryland 21601

or other such addresses or entities either party hereto may from time to time direct by service of notice on the other party.

8. NONASSIGNABILITY.  Neither party hereto shall assign this Agreement or any of its rights or interest hereunder without first obtaining the other party's written consent.

9. TIME OF THE ESSENCE.  Time, whenever mentioned herein shall be of the essence of this Agreement.

10. ENTIRE AGREEMENT.  This is the entire Agreement between the parties hereto regarding the transaction contemplated hereby and there are no other terms, covenants, conditions, provisions, warranties, representations or statements, oral or otherwise, of any kind whatsoever.  Any Agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of this Agreement in whole or in part unless such agreement is in writing and signed by the party against whom enforcement of the change, modifications, discharge or abandonment is sought.

11. HEADINGS.  The headings, if any, incorporated in this Agreement are for the convenience and reference only and are not part of this Agreement and shall not in any way control, define, limit or add to the terms and conditions hereof.

12. GOVERNING LAW.  This Agreement shall be construed, interpreted and governed by the laws of the state in which the principal office of the Debtors are located.

13. COUNTERPARTS. This Agreement may be executed in any number of counterparts, each of which shall be original, but such counterparts together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement under seal, as of the day and year first above written, SUBJECT TO THE APPROVAL OF THE U.S. BANKRUPTCY COURT.

DEBTORS:

TAMPA SKATING, LLC d/b/a CLEARWATER ICE ARENA

By : _____          _____
          Michael Malki                                    Title
Dated: _____

SKATING INVESTMENT, LLC

By : _____          _____
          Michael Malki                                    Title
Dated: _____

EP/USA, LLC

By : _____          For the Firm
          Kenneth W. Mann, Managing Partner
Dated: ___2/24/11___

(553769\1)

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                           Chapter 11

TAMPA SKATING, LLC,                              Case No. 8:11-bk-00085-CED
d/b/a Clearwater Ice Arena,
SKATING INVESTMENT, LLC                          Case No. 8:11-bk-00088-CED
        Debtor.                                  (Jointly Administered under
_____/                Case No. 8:11-bk-00085)


**AFFIDAVIT OF KENNETH W. MANN IN SUPPORT OF APPLICATION TO
EMPLOY BUSINESS BROKER, EP USA, LLC d/b/a EQUITY PARTNERS, INC.**

STATE OF MARYLAND    )
COUNTY OF TALBOT     )


        Kenneth W. Mann, Managing Member of EP USA, LLC d/b/a Equity Partners,
Inc., being duly sworn, deposes and says upon his oath as follows:

1.    That Equity Partners, Inc. has substantial experience in the sale of assets of
businesses, on a going concern basis, both in and out of the jurisdiction of the bankruptcy
court.

2.    That neither I, any associate of Equity Partners, Inc., nor Equity Partners, Inc. have
any connection with the above named estate, its creditors, or any party in interest, or their
respective attorneys or accountants.

3.    That neither I, any associate of Equity Partners, Inc., nor Equity Partners, Inc.
represent any interest adverse to that of the estate or the Debtor-in-Possession in matters
upon which Equity Partners, Inc. of Maryland shall be engaged.

4.    Based on the foregoing, I believe that Equity Partners, Inc. is a "disinterested person"
within the meaning of 11 U.S.C. Section 101 (13).



EXHIBIT
B

5. Affiant has advised the Debtor-in-Possession of its willingness to serve as its agent for the purpose of advertising, marketing and selling the assets of the Debtor-in-Possession as a going concern, and the payment for said services is set forth in the Motion provided to this Court.

FURTHER AFFIANT SAYETH NOT.

Kenneth W. Mann, Member

The foregoing instrument was sworn to and subscribed before me this 24th day of February, 2011, by Kenneth W. Mann, (___) who is personally known to me or (___) who has produced drivers license as identification.

My commission expires:
Notary Public